IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PINEHURST NEUROPSYCHOLOGY, )
PLLC, Individually and on Behalf )
of All Others Similarly Situated, )
                                                                      )
                        Plaintiff, )
)
           v. )     1:20CV636
)
FIRST-CITIZENS BANK & )
TRUST COMPANY, )
)
                       Defendant. )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Pinehurst Neuropsychology, PLLC ("Pinehurst"), initiated this class action in Moore County Superior Court on June 1, 2020, against Defendant, First-Citizens Bank & Trust Company ("First-Citizens"). (ECF No. 1-1.) First-Citizens removed the action to this Court on July 10, 2020, pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1). (ECF No. 1.) Following removal, Pinehurst filed an Amended Complaint on October 7, 2020. (ECF No. 20.) Before the Court are First-Citizens' Motion to Compel Arbitration pursuant to 9 U.S.C. §§ 1, *et seq.*, (ECF No. 23), and its' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 25). For the reasons stated below, First-Citizens' Motion to Dismiss will be granted.

    **I.**    **BACKGROUND**

Pinehurst's Complaint alleges that on March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law, which provided "$376 billion in

economic assistance to small businesses" and created the Paycheck Protection Program ("PPP"). (ECF No. 20 ¶ 19.) Pinehurst claims that the PPP provided for the allocation of "$349 billion in taxpayer funds to the [United States Small Business Association ("SBA")] to make low interest 'forgivable' loans to qualifying small businesses, non-profits, and independent contractors." (*Id.*) Pinehurst's Complaint further alleges that under the CARES Act, the SBA was required "to issue rules implementing the provisions concerning the PPP," and in accordance with this obligation, the SBA issued its Interim Final Rule to implement the PPP. (*Id.* ¶ 23.)

Pinehurst also claims that the CARES Act intended for the SBA to "provide relief to America's small businesses expeditiously," (*id.* ¶ 24), and to obtain this relief, the PPP allowed small businesses that have been harmed by COVID-19 between February 15, 2020, and June 30, 2020, to apply for a loan—guaranteed by the federal government—through a bank, (*id.* ¶¶ 26, 27). Pinehurst alleges that to achieve the CARES Act's objective of providing "relief to small businesses 'expeditiously', PPP lenders like [First-Citizens] were required to process applications on a 'first-come, first-served' basis." (*Id.* ¶ 28.) To support this contention, Pinehurst quotes a provision of the Interim Final Rule which provides: "[t]he following outlines the **key provisions of the PPP** . . . [2.] m. **Is the PPP 'first-come, first-served? Yes.**'" (*Id.* ¶ 29.)

According to Pinehurst's Complaint, First-Citizens submitted a CARES Act Section 1102 Lender Agreement ("CARES Lender Agreement"), to be eligible as a PPP lender. (*Id.* ¶ 31.) Pinehurst alleges that in "the CARES Lender Agreement, any lender, including [First-Citizens], who wished to be approved as a PPP lender was required to adhere to all PPP loan

2

requirements, including the 'first-come, first-served' rule." (*Id.* ¶ 33; *see also id.* ¶ 35.) In addition, Pinehurst alleges that PPP lenders "earned varying percentages of origination fees, based on the loan amount," and the greater the loan amount, the greater the percentage fee the PPP lender would receive. (*Id.* ¶ 45.) Pinehurst argues that this financially incentivized PPP lenders "to move larger loan applications to the front of the queue and approve larger loans ahead of smaller ones," (*id.* ¶ 46), and that this influenced lenders such as First-Citizens to not process loans on a "first-come, first-served" basis, (*id.* ¶ 50).

On April 5, 2020, Plaintiff received, completed, and submitted the application package for a PPP loan from First-Citizens. (*Id.* ¶ 57.) The next day, First-Citizens allegedly informed Pinehurst that its application "is in line." (*Id.* ¶ 58.) On April 9, 2020, Pinehurst alleges that it requested an update regarding its application and was asked by First-Citizens to re-submit a modified application correcting errors, which it did. (*Id.* ¶ 59; ECF No. 12 ¶ 6.) On April 13, 2020, Pinehurst alleges that it was again requested to "modify its application and re-submit certain application material," and it submitted the necessary information to process its loan application. (ECF Nos. 20 ¶ 60; 12 ¶ 7.) On April 17, 2020, Pinehurst's loan application was submitted to an internal officer at First-Citizens. (ECF No. 12 ¶ 8.) The next day, Pinehurst's "loan application was approved internally by" First- Citizens. (*Id.* ¶ 9.) Following internal approval, First-Citizens "electronically submitted an application to the SBA to guarantee [Pinehurst's] loan." (*Id.* ¶ 9.) On April 28, 2020, the SBA denied Pinehurst's loan application because a business may only obtain a single PPP loan. (*See* ECF Nos. 20 ¶ 41; 12 ¶ 10.) First-Citizens then contacted Pinehurst to inform it of the SBA's decision. (ECF No. 12 ¶ 11.) On

3

May 6, 2020, Pinehurst responded confirming "that it had in fact already received a PPP loan from another lender." (ECF No. 26 at 9; *see also* ECF Nos. 12 ¶ 11; 12-6 at 2.)

Pinehurst alleges that First-Citizens' "repeated requests for modifications to [its] application was a manifestation of its prioritizations of larger loans and favored customers over those requesting smaller loans and less-favored customers." (ECF No. 20 ¶ 62.) Pinehurst claims that by submitting a PPP loan application with First-Citizens, "it was denied timely access to funds that would have helped it mitigate the issues resulting from its business reduction and the economic crisis, and was delayed from seeking assistance from a different lender." (*Id.* ¶ 63.) Pinehurst also alleges that this delay caused it financial harm, (*id.*), because it "was unable to retain employees . . . which resulted in a loss of business and collections," (*id.* ¶ 64).

## II.  STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "In determining whether jurisdiction exists, the district court is to regard

the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court should grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* On a motion to dismiss for lack of standing, a court must construe the complaint in the plaintiff's favor, accepting as true the factual allegations in the complaint. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Allegations in the complaint are taken as true, however, "only if they are not controverted by evidence from the defendant." *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013). If both sides present evidence, "factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made." *Id.*

### III. DISCUSSION

In support of its motion to dismiss, First-Citizens argues, among other things, that this Court lacks subject matter jurisdiction to hear this action because Pinehurst "suffered no injury in fact and therefore lacks standing." (ECF No. 26 at 6.) In response, Pinehurst argues that it was injured because it "was delayed in receiving its money under the PPP loan program and suffered significant harm as a result." (ECF No. 29 at 8.)

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1547 (2016). To establish constitutional standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S. at 518).

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). In class action suits, the class representative must allege injury to itself, and cannot "establish standing only as [a] representative[ ] of [its] members who have been injured in fact, and thus could have brought suit in their own right." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976) (citing *Warth*, 422 U.S. at 511).

Here, Pinehurst argues that it has established standing because it suffered an injury through the delay in receiving a PPP loan from First-Citizens. (ECF No. 29 at 8.) Pinehurst has failed, however, to allege facts sufficient to demonstrate that it actually suffered any delay. Moreover, even if such delay did occur, Pinehurst fails to establish that it has a legally protected interest in receiving any loan from First-Citizens, irrespective of a delay.

Pinehurst first applied for a PPP loan from First-Citizens on April 5, 2020. On April 9, 2020, Pinehurst was asked to correct certain errors in its loan application, and on April 13, 2020, Pinehurst submitted other information required to process the loan application. Four

6

days after receiving a properly completed loan application from Pinehurst, First-Citizens submitted Pinehurst's loan application for internal approval, and the loan was approved the next day. First-Citizens then submitted an application to the SBA to obtain a guarantee for the loan, which was denied on April 28, 2020, because Pinehurst had already received its PPP loan from another bank—a fact Pinehurst conspicuously omitted from its Amended Complaint. Because the PPP program allows a loan recipient to receive only one PPP loan, the circumstances surrounding the loan that Pinehurst did in fact receive is necessary to evaluate whether an injury from such alleged delay did in fact occur. In addition, the facts alleged raise serious questions of whether or not any delay is fairly traceable to First-Citizens' conduct or the conduct of Pinehurst.

More importantly, Pinehurst has failed to plausibly allege facts to demonstrate that it, in fact, was entitled to such loan and therefore cannot show that any delay was an "invasion of a protected interest," causing injury. Pinehurst cites a number of cases from other circuits to argue that a delay in receipt of owed money is a concrete and particularized injury. (*See id.* at 7–8.) In each of these cases, however, the courts found that plaintiff was entitled to receive *the owed money* sooner. *See, e.g.*, *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("[T]he temporary loss of use *of one's money* constitutes an injury in fact for purposes of Article III." (emphasis added)); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) ("The inability to have and use money *to which a party is entitled* is a concrete injury." (emphasis added)). While these cases are not authoritative, they are persuasive. Here, Pinehurst has not alleged that it was entitled to a PPP loan from First-Citizens. Rather, Pinehurst was a loan applicant whose application could have been approved or denied for a variety of reasons at

7

First-Citizens' discretion. *See Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 748 (D. Md. 2020) ("The Interim Final Rule lists a number of reasons why an applicant may be deemed 'ineligible' for a PPP loan. Neither the CARES Act nor the Interim Final Rule imposes prohibitions on what lenders may do in their processes for accepting or processing applications." (internal citation omitted)), *appeal dismissed*, No. 20-1438, 2020 WL 6042036 (4th Cir. May 28, 2020).

The Court concludes that because Pinehurst has failed to allege that it was delayed in receiving funds to which it was entitled, it has not demonstrated that it plausibly suffered an invasion of a legally protected interest. Accordingly, in construing the allegations in Pinehurst's Complaint in the light most favorable to it and drawing all reasonable inferences in its favor, Pinehurst has failed to allege facts sufficient to support a finding that Pinehurst has standing. Thus, First-Citizens' Motion to Dismiss for lack of standing will be granted, and this action will be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that First-Citizens' Motion to Dismiss, (ECF No. 25), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED.**

**IT IS FURTHER ORDERED** that First-Citizens' Motion to Compel Arbitration (ECF No. 23), is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

This the 29th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge